IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Gehrke,<br><br>    Plaintiff,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>    Defendants. | No. CV 08-0137-PHX-GMS (DKD)<br><br>**ORDER** |

Plaintiff Richard Gehrke brought this civil rights action under 42 U.S.C. § 1983 against various Arizona Department of Corrections (ADC) officials: former Director Dora Schriro, Facility Health Administrator (FHA) Gene Greeley, FHA Richard Pratt, and Dr. Macabuhay (Doc. #8). Before the Court is Defendants' Motion for Summary Judgment (Doc. #30), which is fully briefed (Doc. ##37, 39).

The Court will grant Defendants' motion and terminate the action.

**I.  Background**

Plaintiff's claim arose in 2006 during his confinement in Special Management Unit (SMU) II-Eyman in Florence, Arizona (Doc. #8 at 1). In his First Amended Complaint, Plaintiff alleged that his Eighth Amendment rights were violated when, after falling and sustaining a broken hand and injuries to his back and legs, he received inadequate medical treatment (id. at 3). He claimed that his hand was not examined by a doctor for three weeks after his injuries, that the doctor failed to order x-rays at that time, and that he received no treatment for his back and leg injuries (id. at 3, Attach.). Plaintiff further

claimed that he did not receive pain medication for over a month after sustaining his injuries and that he continues to suffer pain and numbness as a result of inadequate treatment (id.). Plaintiff averred that he presented multiple Health Needs Requests (HNRs) to Defendants but they failed to act (id.).[1]

## II. Motion for Summary Judgment

### A. Facts

In support of their motion, Defendants submit a Statement of Facts (DSOF) (Doc. #31), to which Plaintiff responds with his Objections (POBJ) and Controverting Statement of Facts (PSOF) (Doc. #38). Defendants also file their objections to PSOF (DOBJ) (Doc. #40).[2] These documents set out the following facts:

On February 1, 2006, Plaintiff submitted an HNR indicating that he had slipped in some water, hit his head on the floor, injured his lower back and two fingers on his right hand, and suffered severe headaches and pain (DSOF ¶ 27; PSOF ¶¶ 2, 5). Plaintiff states that he broke the 4th and 5th metacarpal shafts on his hand and incurred a herniated disc on his spine (PSOF ¶ 3). That same day, Plaintiff attempted to submit an HNR but from February 1-3, corrections officers (COs) and nurses refused to accept it (PSOF ¶¶ 7-8). Finally, on February 3, Plaintiff was seen by Nurse Markosian; Markosian noted swelling but no bruising on Plaintiff's right hand and provided Plaintiff with four tablets of Ibuprofen (DSOF ¶ 28; PSOF ¶¶ 9, 12). Markosian refused to make a referral to the health care provider or provide a lower bunk Special Needs Order (PSOF ¶ 13).

Plaintiff submitted a February 18 inmate letter in which he complained about his fall and that the nurse who saw him on February 3 failed to examine his back or order x-rays (DSOF ¶ 29; PSOF ¶ 14). He also complained that despite medical requests

---

[1] Upon screening, the Court dismissed Plaintiff's other count for failure to state a claim (Doc. #9).

[2] Because many of Plaintiff's and Defendants' objections concern facts that are not material, the Court declines to address every specific objection. In its analysis, the Court has not relied on any facts that would be inadmissible at trial. Thus, to the extent that either party relies on inadmissable evidence to support a statement of fact, the objections are sustained; however, their objections are otherwise overruled.

submitted on February 8 and 15, he had not been seen and was still in pain (id.). Plaintiff submitted another inmate letter on February 21 with the same complaints, including that he had not received a response to the February 18 inmate letter (DSOF ¶ 30; PSOF ¶ 16). Plaintiff states that he did not receive a response to the February 21 letter until April 17 (PSOF ¶ 17).[3]

On February 23, Plaintiff was examined by Dr. McRill, who (1) noted no bruising or swelling of the hand or back; (2) ordered x-rays of the hand, hip and spine; (3) performed the hand x-ray; (4) requested an outside consultation with an orthopedic specialist; (5) prescribed Ibuprofen and a splint; and (6) issued a lower bunk Special Needs Order (DSOF ¶ 31; PSOF ¶ 22). Defendants state that McRill also noted that if Plaintiff's symptoms improved, the order for hip and spine x-rays may be discontinued (id.).

The February 23 hand x-ray was reviewed by Dr. Weiss, who noted that there was an old posttraumatic deformity of the 4th and 5th metacarpals with angulation present (DSOF ¶ 34).[4]

On March 4, Nurse Mason noted that Plaintiff transferred to another unit and, thus, reordered x-rays because neither the hip or spine x-ray had been performed (DSOF ¶ 32). On March 10, another hand x-ray was taken (DSOF ¶ 33).

On March 14, Plaintiff filed an inmate letter to "Medical" stating that he needed a prescription filled for Ibuprofen and that he was still waiting for x-rays on his back (DSOF ¶ 35; POBJ ¶ 35). On March 16, Plaintiff filed another inmate letter to CO III

---

[3] In that April 17 response to the February 21 inmate letter, Greeley stated that since the filing of the inmate letter, Plaintiff's concerns had been addressed (DSOF ¶ 46).

[4] Plaintiff objects to this statement as hearsay and double hearsay (POBJ ¶ 34), and he asserts that the record did not note that the metacarpals were injured previously (PSOF ¶ 27). Defendants' statement is supported by the declaration of Macabuhay (DSOF ¶ 34), which in turn is supported by attached copies of Plaintiff's medical records (Doc #31, Ex. H, Macabuhay Decl. ¶ 7, Attach. 5). The relevant record states "[t]here are old healed fractures of the 4th and 5th metacarpal noted" (id.). Medical records are admissible under the business records exception to the hearsay rule. Fed. R. Evid. 803(6). Plaintiff's objection—as well as his other objections to statements supported by attached medical records—is therefore overruled (see POBJ ¶¶ 39, 40, 55, 57-58).

Hewitt stating that he needed a prescription for Ibuprofen filled, that he had not seen a hand specialist, and that he still needed back and leg x-rays (DSOF ¶ 36; POBJ ¶ 37). And again on March 18, Plaintiff filed an inmate letter to "Medical" with the same complaints (DSOF ¶ 37).

On March 23, orthopedic specialist Dr. Jabczenski saw Plaintiff by telemed and noted that Plaintiff had good range of motion with no tenderness in his hand (DSOF ¶ 38). Jabczenski further noted that the metacarpal fracture had healed with acceptable alignment and the resulting deformity was not severe enough to operate; he stated that Plaintiff would have a good prognosis and no follow-up was necessary (id.).[5]

On March 30, McRill responded to Plaintiff's March 14 and 18 inmate letters by reordering the hip and spine x-rays, filling the Ibuprofen prescription, and scheduling a health-care-provider evaluation (DSOF ¶ 39; PSOF ¶ 31).

On April 3, Plaintiff submitted an inmate letter complaining that his lower back still hurt and he had not had back x-rays (DSOF ¶ 41).

On April 6, Greeley responded to Plaintiff's March 14 and 18 inmate letters and noted that Plaintiff had been seen by the orthopedic specialist and that his x-ray requests would be resubmitted and he would be scheduled for follow-up (DSOF ¶ 42). On April 10, CO III Hewitt responded to Plaintiff's March 16 inmate letter and stated that he could not satisfy Plaintiff's request at the grievance level (DSOF ¶ 44).

On April 13, Nurse Christensen completed a care/transfer summary report because Plaintiff was to be transferred from SMU to the Arizona State Prison Complex-Lewis Unit (DSOF ¶ 45). Plaintiff was transferred the next day (PSOF ¶ 32).

Then, on April 24, Plaintiff filed an inmate grievance stating that he still had not had x-rays for his back and he requested monetary compensation for the delays and his suffering (DSOF ¶ 48; PSOF ¶ 33). This grievance was forwarded to Pratt (DSOF ¶ 50;

---

[5] Plaintiff objects to DSOF ¶ 38 as speculative and hearsay (POBJ ¶ 38). The objection is overruled because the medical record from Jabczenski's evaluation is attached and a physician's prognosis is not considered speculative for admissibility purposes (see Doc. #31, Ex. H, Attach. 6). See Fed. R. Evid. 803(6).

PSOF ¶ 34). On May 5, Pratt met with Plaintiff and explained that Plaintiff's treatment plan would be evaluated by medical to address all of his needs and that Plaintiff could appeal Pratt's decision to the Director (DSOF ¶ 50; PSOF ¶ 38).

On May 11, Dr. Vinluan examined Plaintiff and noted Plaintiff's lack of back x-rays and his complaints of back, leg, and hip pain (DSOF ¶ 51). Vinluan ordered x-rays, refilled the Ibuprofen prescription, and renewed the lower bunk Special Needs Order (id.). Plaintiff's hip and spine were x-rayed on May 22 (DSOF ¶ 52). Also on May 22, Plaintiff submitted his appeal to Schriro stating that he did not receive prompt medical attention or x-rays (PSOF ¶ 39).

On May 24, Greeley responded to Plaintiff's April 3 inmate letter and indicated that since he was no longer in the SMU I-Eyman unit, he had to put in an HNR to "start the process" over at the Lewis unit (DSOF ¶ 54).

On June 7, Plaintiff's hip and spine x-rays were reported to show that Plaintiff's left hip was normal and there was no evidence of fracture or dislocation and there was "mild degenerative findings" in the lumbosacral spine (DSOF ¶ 55; PSOF ¶ 49).

Plaintiff submitted an HNR on August 5 stating that his back was stiff and sore and it was extremely painful to lie down or bend over (DSOF ¶ 57; PSOF ¶ 50). On August 17, Macabuhay examined Plaintiff, noted Plaintiff's complaints, and assessed that Plaintiff had chronic lower back pain (DSOF ¶ 58; PSOF ¶ 52). Macabuhay advised that there was nothing to do for the pain other than take Ibuprofen, which he renewed, and Macabuhay also prescribed Flexeril (DSOF ¶ 58). Plaintiff states that Flexeril was unnecessary because it is for back spasms, which he never experienced (PSOF 55-56).[6]

On September 1, Steve Ickes responded to Plaintiff's Director's appeal on behalf of Schriro (DSOF ¶ 59: PSOF ¶ 58; DOBJ at 4). Ickes summarized Plaintiff's medical

---

[6]Defendants object to PSOF ¶ 56 on the ground that Plaintiff lacks personal knowledge and expertise as to the necessity of prescribing Flexeril (DOBJ at 3). The Court overrules Defendants' objection because PSOF ¶ 56 is not considered for the fact that Flexeril is only for back spasms, but only to demonstrate Plaintiff's disagreement with Macabuhay's prescription order.

1 treatment and concluded that Plaintiff was seen in accordance with his orthopedic needs; the appeal was denied (PSOF ¶¶ 60-61).

In September 2008, Plaintiff had an MRI of his back, which showed that he had arthritis of the lower spine and a herniated disc (PSOF ¶¶ 62-63). Plaintiff states that he was informed by Dr. Lewis, who reviewed the MRI, that the arthritis and herniated disc are likely the result of his 2006 injury, and these injuries require surgery or chiropractic care, neither of which will be provided by ADC (PSOF ¶ 64).

### B. Parties' Contentions

#### 1. Defendants' Motion

Defendants move for summary judgment on the grounds that (1) Defendants were not deliberately indifferent to Plaintiff's medical needs, (2) Plaintiff's claim for punitive damages must be dismissed, and (3) the Eleventh Amendment bars damages against Defendants in their official capacity (Doc. #30). In support of their motion and DSOF, Defendants submit the declaration of each Defendant with attachments (Doc. #31, Exs. B, D-E, H) and excerpts from Plaintiff's deposition (id., Exs. C, F-G, I-J, Pl. Dep. Mar. 12, 2009).

The motion sets out each Defendant's role in Plaintiff's medical care and argues that there is no evidence that any of them were the cause of Plaintiff's injury or denied Plaintiff the "minimal civilized measure of life's necessities" (id. at 5-10). Defendants contend that Schriro's only role was as part of the grievance process (id. at 6). Defendants submit that she delegated authority to Ickes to decide Plaintiff's grievance appeal, and he responded to the appeal on her behalf (id. at 5-6). Defendants note that Schriro does not have a medical degree and she did not create medical treatment protocols at ADC (id. at 6). They also contend that she never provided medical treatment or advised about medical treatment. And Defendants point out that at the relevant time, the Medical Program Manager was assigned to develop procedures governing inmate healthcare (id.). Defendants argue that Schriro was not involved in Plaintiff's treatment and therefore was not deliberately indifferent to his medical needs (id. at 6-7).

1 | Defendants argue that, like Schriro, Greeley—as FHA—does not provide medical
2 | care, create medical policy, or make decisions on medical issues; rather, those decisions
3 | are made by attending physicians or the health care provider (id. at 7). Defendants assert
4 | that Greeley cannot override the health care provider's course of treatment (id.).
5 | Defendants explain that when the medical unit receives an inmate letter, it is forwarded to
6 | the individual most familiar with the patient or circumstances to draft a response and that
7 | the role of the FHA is to review the response and ensure that the issues raised in the
8 | inmate letter have been addressed (id.). Defendants maintain that Greeley's involvement
9 | with Plaintiff was limited to correspondence with inmate letters pursuant to this procedure
10 | (id.).

11 | With respect to Pratt, Defendants contend that his responsibilities are
12 | administrative, like Greeley's (id. at 8). And Defendants note that Pratt does not make
13 | medical decisions, nor can he override the health care provider's course of treatment (id.).
14 | Defendants assert that Pratt responded to Plaintiff's grievance as required under the
15 | grievance policy and met with Plaintiff; Pratt arranged to have Plaintiff's treatment
16 | evaluated to address his needs including an examination, which Plaintiff received within a
17 | week after meeting with Pratt (id.). Defendants argue that this limited involvement does
18 | not exhibit any deliberate indifference on the part of Pratt (id. at 8-9).

19 | Finally, as to Macabuhay, Defendants assert that he had contact with Plaintiff on
20 | just one occasion—the August 17, 2006 examination (id. at 9). Defendants argue that
21 | Macabuhay thoroughly examined Plaintiff and treated his chronic back pain appropriately
22 | with Ibuprofen and Flexeril (id.). They conclude that there is nothing to indicate that
23 | Plaintiff needed additional treatment beyond what Macabuhay prescribed and that this
24 | single examination cannot result in a finding of deliberate indifference (id. at 9-10).

25 | Defendants' remaining arguments concern limits on Plaintiff's damages should the
26 | Court find that summary judgment is not warranted (id. at 10). They contend that
27 | Plaintiff's claim for punitive damages is misplaced because there is no evidence that
28 | Defendants acted with evil motive or callous indifference to Plaintiff's rights (id.).

1  Defendants further contend that the Eleventh Amendment bars any damages claims
2  against them in their official capacity (id. at 10-11).

### 2. Plaintiff's Response[7]

Plaintiff opposes Defendants' motion (Doc. #37). Along with his POBJ and PSOF, he proffers his own declaration (Doc. #38, Ex. A) and copies of inmate letters and Dr. Lewis' 2008 MRI report (id., Attachs. 1-2). Plaintiff maintains that there is ample evidence of genuine issues of material fact precluding summary judgment (Doc. #37).

Plaintiff asserts that his injuries constituted a serious medical need (id. at 4). And he argues that each Defendant was aware of Plaintiff's injuries and the potential for further injury and pain without treatment (id.). Plaintiff cites to case law defining deliberate indifference as a failure to respond to pain or a possible medical need and the resulting harm, and he submits that under this standard, Defendants were all deliberately indifferent (id. at 5).

### 3. Defendants' Reply

In reply, Defendants argue that Plaintiff fails to submit any evidence or argument to contradict that Schriro's, Greeley's, and Pratt's involvement was limited to the grievance process or that Macabuhay examined Plaintiff only once and provided proper treatment (Doc. #39 at 1-2).

### 4. Plaintiff's Sur-Reply

Plaintiff submits a sur-reply in which he requests that Schriro's declaration statements not be considered in the summary judgment analysis because they are, to some extent, a legal opinion (Doc. #41). Plaintiff also responds to DOBJ and notes that many of Defendants' objections are irrelevant, false, or merely argumentative and do not directly dispute PSOF (id. at 3-5).[8]

---

[7]The Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion (Doc. #32).

[8]In his sur-reply, Plaintiff requests that the Court address and rule on each and every objection (Doc. #41 at 2). The Court denies Plaintiff's request. See n. 3, supra.

- 8 -

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

### B. Deliberate Indifference

To prevail on an Eighth Amendment medical care claim, a prisoner must

demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted).

A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60.

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). To establish deliberate indifference, a prisoner must show that the

delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

"[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). Therefore, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**IV.     Analysis**

The parties do not dispute that Plaintiff suffered from a serious medical need, thereby satisfying the first prong of the deliberate indifference test. Estelle, 429 U.S. at 104. Thus, the summary judgment analysis turns on whether Defendants' response to Plaintiff's serious medical need was deliberately indifferent. See Jett, 439 F.3d at 1096.

    **A.     Medical Care**

The first question in the deliberate indifference analysis is whether Plaintiff's treatment and the delay in obtaining x-rays implicates the Eighth Amendment. The record shows that after his fall on February 1, 2006, Plaintiff was seen by medical personnel or x-rayed on the following dates: February 3 and 23; March 10 and 23; May 11 and 22; and August 17 (Doc. #31, DSOF ¶¶ 28, 31, 33-34, 51-53, 58; Doc. #38, PSOF ¶¶ 9, 22, 25, 29, 45, 47, 51). During this course of treatment, Plaintiff received prescription medication, a splint, a referral to and consultation with an orthopedic specialist, x-rays, Special Needs Orders for a lower bunk, and medical reviews of his condition (see id.). Plaintiff's frequent medical appointments and variety of treatments in the six months after his fall do not raise an Eighth Amendment concern. Moreover, Plaintiff's disagreement with the efficacy of Ibuprofen and Flexeril for pain is insufficient to demonstrate deliberate indifference. See Toguchi, 391 F.3d at 1058.

With respect to the x-rays, the evidence reflects that a hip and spine x-ray were initially ordered on February 23, but Plaintiff did not get those x-rays until May 22—a

- 11 -

delay of three months (id., DSOF ¶¶ 31, 52). As stated, a delay in medical treatment offends the Constitution only if it is harmful. Hunt, 865 F.2d at 200.

In his declaration, Plaintiff avers that he continues to suffer pain in his back, numbness in his leg, and has difficulty walking and lying down (Doc. #38, Ex. A, Pl. Decl. ¶ 29). He also states that he suffers pain daily in his hand and fingers (id. ¶ 33). There is no evidence, however, that Plaintiff's ongoing medical conditions resulted from any delay in obtaining x-rays or treatment as opposed to the initial injuries incurred when he fell in 2006. Although Plaintiff declares that in 2008, Dr. Lewis informed him that he will need surgery for a herniated disc (id. ¶ 28), there is nothing to show that surgery was required and denied in 2006, or that any delay in obtaining surgery led to further harm. See Shapley, 766 F.2d at 407 ("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

In short, Plaintiff submits no medical evidence showing that the delay in obtaining x-rays caused him further injury. See Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir. 1988) (in medical cases where the plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish deliberate indifference). And Plaintiff falls well short of demonstrating that the course of treatment he received was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of a risk to his health. See Jackson, 90 F.3d at 332. Therefore, there exists no genuine issue of material fact that Plaintiff's medical treatment amounted to deliberate indifference.

**B.     Liability**

Nonetheless, even if there was a material factual question whether Plaintiff's medical care constituted deliberate indifference, there is nothing to establish liability for any of the named Defendants.

To establish deliberate indifference, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. McGuckin, 974 F.2d at 1060; Shapley, 766 F.2d at 407. "The prisoner must set forth specific facts as to each individual

defendant's deliberate indifference." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff argues that Defendants were all aware of his injuries but were indifferent and callous and delayed adequate treatment and pain medication (Doc. #37 at 2, 4; Doc. #38, PSOF ¶¶ 36, 57, 61).

### 1. Schriro

Schriro is not a medical professional, nor did she have any part in providing medical care or prescribing medical treatment to prisoners (Doc. #31, Ex. B, Schriro Decl. ¶ 4). The record shows that decisions regarding individual medical issues or medical treatment are made by the attending physician or the health care provider (id., Ex. E, Greeley Decl. ¶ 9). Further, Plaintiff confirmed that his only contact with Schriro was through the grievance process (id., Ex. C, Pl. Dep. 46:18-21). Thus, Schriro was not involved in the day-to-day operations of inmate healthcare, and there is no evidence that she was aware of Plaintiff's treatment or any delays and failed to act in disregard to the risk to Plaintiff's health. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980) (the prison director "could not be charged with responsibility for the neglect or delay, if any, of his subordinates in the absence of his direction or participation therein"). Further, her role in denying Plaintiff's appeal is insufficient to establish liability because Plaintiff's appeal merely complained of past medical care and sought compensation for his pain and suffering. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of an administrative grievance, the failure to intervene to remedy alleged unlawful behavior does not amount to active unconstitutional conduct for the purposes of § 1983). Consequently, there is no dispute of material fact concerning Schriro's liability for deliberate indifference.

### 2. Greeley and Pratt

Greeley is also not a medical professional and, like Schriro, neither he nor Pratt

were involved in providing medical care or prescribing medical treatment to prisoners (Doc. #31, Ex. D, Greeley, Decl. ¶ 8; Ex. E, Pratt Decl. ¶ 8). As stated, all treatment decisions are made by the attending physician or the health care provider (id., Ex. E, Greeley Decl. ¶ 9). Plaintiff admitted that his only contact with Pratt was through the grievance process (id., Ex. G, Pl. Dep. 36:7-19), and his only contact with Greeley was through HNRs and the grievance process (id., Ex. F, Pl. Dep. 38:25-39:5).

On this record, there is no material factual dispute that Greeley or Pratt are liable for a constitutional violation. Their role in the grievance process does not give rise to liability. Shehee, 199 F.3d at 300. But even when considering their grievance responses, the evidence shows that Greeley appropriately relied on information from the health care provider showing that Plaintiff was receiving regular care (Doc. #31, Ex. D, Greeley Decl. ¶¶ 17, 19-20). And Pratt, in response to Plaintiff's concerns, ordered an evaluation of Plaintiff's treatment plan (id., Ex. E, Pratt Decl. ¶ 19). This conduct does not reflect any indifference to Plaintiff's health, and Plaintiff's conclusory allegations to the contrary are insufficient to defeat Defendants' motion. Leer, 844 F.2d at 634.

### 3. *Macabuhay*

Dr. Macabuhay's single contact with Plaintiff was the August 17 examination (Doc. #31, Ex. H, Macabuhay Decl. ¶ 19). The record reflects that Macabuhay responded to Plaintiff's complaints, reviewed his x-rays, rendered a diagnosis of chronic lower back pain, renewed the Ibuprofen prescription and prescribed Flexeril for pain (id. ¶¶ 18-19; Attach. 12). Plaintiff does not set forth any specific facts showing that this treatment was deficient, much less that it amounted to deliberate indifference. See Leer, 844 F.2d at 634. Indeed, in his deposition when asked how specifically Macabuhay violated his rights, Plaintiff responded that he did not know and he could not name anything specific that Macabuhay could have done differently (id., Ex. I, Pl. Dep. 45:7-23). As a result, Plaintiff fails to raise a material issue of fact concerning Macabuhay's liability for deliberately indifferent care.

For the above reasons, Defendants' Motion for Summary Judgment will be

- 14 -

granted, and the Court need not address Defendants' arguments going to damages.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. #30).

(2) Defendants' Motion for Summary Judgment (Doc. #30) is **granted**.

(3) The Clerk of Court must terminate this action and enter judgment accordingly.

DATED this 8th day of February, 2010.

*G. Murray Snow*
G. Murray Snow
United States District Judge